**NELSON–RICKS CREAMERY COMPANY**

v.

**The UNITED STATES.**

**No. 164–79T.**

United States Court of Claims.

Oct. 22, 1980.

J. Gordon Hansen, Salt Lake City, Utah, atty. of record, for plaintiff.

Theodore D. Peyser, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr

Ferguson, Washington, D. C., for defendant; Donald H. Olson and Kevin B. Shea, Washington, D. C., of counsel.

Before KASHIWA, KUNZIG and BENNETT, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge:

The sole issue we face here is whether a cheese manufactured by plaintiff is subject to a manufacturer's excise tax imposed by Congress on "artificial lures, baits, and flies." 26 U.S.C. § 4161(a) (1976).

Plaintiff–taxpayer is a manufacturer and distributor of dairy products in Utah and several other mountain states. In the 1950's, Nelson–Ricks introduced Gold Nugget Processed Cheese Spread into its line of dairy products. The cheese spread combined bulk cheddar cheeses and other milk products to produce a spreadable cheese. This cheese was sold along with other dairy products on the grocer's shelves.

As plaintiff states in its brief, the company soon learned that fishermen were buying "Gold Nugget" not only for their own lunch, but to feed to fish as bait. Having discovered this new market, Nelson–Ricks changed the *packaging* of its "Gold Nugget" cheese and *relabeled* the cheese "Targhee Cheese Fish Bait."

Previously, "Gold Nugget" was packaged in two pound cardboard boxes. Obviously, this bulky package did not fit easily into a tackle box or creel. Consequently, "Targhee Cheese Fish Bait" was packaged in 8 ounce containers, 3 inches round by 3 inches high, which, conveniently, fit into a standard tackle box or creel.

In terms of the cheese itself, there have been just two minor "changes." First, "Targhee" contains a different emulsifier than does "Gold Nugget." This emulsifier, or binder, is the same one used by other cheese spread manufacturers and does not change the cheese's edibility. In other words, the fishermen can still eat the cheese for lunch. Secondly, there are now three flavors and colors to choose from–yellow, red and green in regular, garlic and anise flavors. Apparently, this was a marketing technique designed to assure greater shelf space than a competitor. Otherwise, this cheese is the same as "Gold Nugget" and fit for the consumption of either humans or fish.

These labeling and packaging changes prompted Treasury to argue that "Targhee Cheese Fish Bait" is an "artificial bait" under 26 U.S.C. § 4161(a) and plaintiff owes a 10 percent manufacturer's excise tax. Plaintiff was assessed these taxes on its cheese, paid the tax and sought timely refund. Its claim was disallowed and taxpayer timely petitioned this court for refund.

■ The excise tax is imposed. by § 4161(a) which provides:

(a) RODS, CREELS, ETC.–There is hereby imposed upon the sale of fishing rods, creels, reels, and artificial lures, baits, and flies (including parts or accessories of such articles sold on or in connection therewith, or with the sale thereof) by the manufacturer, producer, or importer a tax equivalent to 10 percent of the price for which so sold.

26 U.S.C. § 4161(a) (1976). Reg. § 48.-4161(a)–2(d).

As a perusal of this statute will show, the key word is "artificial." Defendant essentially argues that anything altered from its natural state by people is "artificial" and subject to this tax. Thus, while milk might avoid this tax, presumably, pasteurized milk would not. In this day and age, with the numerous refinings and processings that "natural products" go through, almost anything could be artificial. Actually, defendant's own regulation gives a more common–sense and appropriate definition of what is an "artificial bait, lure, or fly" within the meaning of the statute.

The Treasury's regulation reads as follows:

(d) *Artificial lures, baits, and flies.* The term "artificial lures, baits, and flies" includes all artifacts, whatever materials made, that simulate an article con-

sidered edible to fish, and that are designed to be attached to a line or hook to attract fish so that they may be captured. Thus, the term includes such artifacts as imitation flies, blades, spoons, spinners, etc., and edible materials that have been processed so as to resemble a different edible article considered more attractive to fish, such as bread crumbs treated so as to simulate salmon eggs, and pork rind cut and dyed to resemble frogs, eels, or tadpoles.

Defendant alleges that the cheese resembles fish eggs or fish flesh and hence falls within the regulation's requirement that an artificial bait "simulate an article considered edible to fish."

As another court reviewing this same section noted, in interpreting this statute, "The law is relatively clear that a taxing provision, as opposed to an exemptive provision, should be construed against the Government and any doubt resolved in favor of the taxpayer." *Norton Manufacturing Corp. v. United States*, 288 F.Supp. 829, 831 (N.D.Ill.1968), *aff'd*, 409 F.2d 902 (7th Cir. 1969). Moreover, the words of the statute are usually construed according to their common and ordinary meaning.

To start, the dictionary defines artificial for our purposes as a product "produced by man's skill to imitate nature," or an "imitation of a natural object." *Webster's Third New International Dictionary* (unabridged edition). We can find no reason for treating this dairy product as artificial. Even were there an addition of preservatives, colorings and chemicals, most people regard such cheeses and foods as natural products. The only thing plaintiff's cheese "imitates" is cheese.

Defendant argues that the cheese simulates salmon eggs or fish flesh. If so, any cheese does, as might certain meats or vegetables. Do we tax a bologna manufacturer because a fisherman cuts it up to resemble a minnow?

Even if the cheese is shaped to represent a salmon egg, the manufacturing is done by the fisherman–not Nelson–Ricks. Similarly, if it is torn off to resemble a hunk of green, anise flavored fish flesh, that too is done by the fisherman. We feel that Congress intended to tax items such as are detailed in the regulations, "bread crumbs treated so as to simulate salmon eggs, and pork rind cut and dyed to resemble frogs, eels, or tadpoles," or those items which commonly come to mind, rubber grasshoppers, plastic minnows and silicon worms. This court has previously used a common–sense approach in interpreting this statute as we are required to do. *See, Hine v. United States*, 125 Ct.Cl. 836, 113 F.Supp. 340 (1953). In that case, we found a "fishing pole kit" taxable because, although it lacked guides and tip–top, it would commonly be understood and accepted as a fishing rod. Here, plaintiff's product would be commonly understood and accepted as cheese–not as imitation fish flesh.

Moreover, defendant's interpretation pushes the absurd. While it is true that "Targhee Cheese Fish Bait" is packaged for fishermen, it is basically cheese. Further, defendant does not allege that plaintiff owes a 10 percent excise tax on its "parent" Gold Nugget Processed Cheese Spread which some die–hards are undoubtedly still using for cheese bait–and probably for less money than Targhee. Are we to tax every cheese that some fisherman uses for bait? Of course not, and it is obvious that defendant would not argue that either. But, what this analysis shows is that Treasury is taxing plaintiff for producing an "artificial *Fisherman* lure." The packaging and labeling make the cheese attractive to the fisherman and not the fish.

■ An analogous situation involving this same excise tax is instructive and supports our conclusion. In *Norton Manufacturing Corp. v. United States*, 409 F.2d 902 (7th Cir. 1969), the Seventh Circuit faced the question of whether bamboo poles, which the taxpayer cleaned, straightened, varnished, cut into sections and fitted with metal ferrules with wire loops, were taxable as a fishing rod or pole. The court concluded that the bamboo pole was not subject to the tax because the manufacturing did not really change the object, but

only made it more convenient to carry. In other words, as in our case, the only real changes were made to make an otherwise non–taxable item more attractive to the fisherman. *Accord, Simmons v. United States,* 308 F.2d 938 (5th Cir. 1962). *But see, Commèrce–Pacific, Inc. v. United States,* 278 F.2d 651 (9th Cir. 1960). *See also, Nordby Supply Co. v. United States,* 572 F.2d 1377 (9th Cir. 1978).

In summary, Congress has not elected to tax the production of lures, baits, and flies attracting *fishermen.* There must be something more. The Treasury's own regulations follow the ordinary interpretation of the word artificial and support the conclusion that taxpayer's repackaged cheese spread is not the kind of product simulating a natural fish bait which Congress intended to tax.

Accordingly, upon consideration of the parties' submissions and after oral argument, defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted and the case is remanded to the trial division for further proceedings under Rule 131.